UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUCKEYE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1747SNL |
| ) | |
| UNISOURCE WORLDWIDE, INC. and ) | |
| CRAIG SASSO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed this diversity action seeking equitable relief and damages for breach of contract, tortious interference with a contract, and violation of Missouri's Uniform Trade Secrets Act (§417.450 R.S.Mo. *et. seq.*) in connection with alleged violation(s) of a Non-Compete Agreement. This matter is before the Court on the defendants' motion to transfer (#15), filed October 23, 2007.[1] Responsive pleadings have been filed by the parties, and the matter is now ripe for disposition.

Plaintiff alleges that defendant Sasso, a long-term employee terminated from his employment with plaintiff in May 2007, began employment with a competitor in violation of defendant Sasso's Non-Compete Agreement with plaintiff. Plaintiff further alleges that this is not the first time that defendant Unisource has employed a former Buckeye Int'l employee in violation of a non-compete agreement (between the former Buckeye Int'l employee and plaintiff). Before addressing the instant motion, it is necessary for the Court to first set out a brief synopsis of the

---

[1]The motion to transfer was originally filed solely by defendant Unisource. However, on October 24, 2007 defendant Sasso joined in the filing of the instant motion. *See*, Court Document #21.

litigation history of this cause of action.[2] Plaintiff is a Missouri corporation with its principal place of business in St. Louis County, Missouri. It has business offices in Florida and/or Georgia. Defendant Unisource is a Delaware corporation with business offices in Missouri, Florida, and Georgia. Defendant Sasso is a resident of Georgia.

Buckeye is and was at all times relevant to this cause of action engaged in the business of manufacturing, selling and distributing janitorial supply and maintenance products for commercial applications. Defendant Sasso was employed by plaintiff Buckeye from on or about June 21, 1998 to on or about February 5, 2007 in the position of Sales Representative in Tallahassee, Florida, then as General Manager on the Buckeye Cleaning Center in Norcross, Georgia.

On or about June 21, 1998 defendant Sasso entered into and executed an Employee Non-Competition and Confidential Information Agreement (Non-Compete Agreement) with Buckeye.[3] The Non-Compete Agreement, among other things, prohibits defendant Sasso from employment, for one (1) year following termination of employment with Buckeye, with a third-party competitor within one hundred (100) miles of Tallahassee, Florida; and from contacting or soliciting business on Sasso's own behalf or a competitor's behalf, any Buckeye customer or prospective Buckeye customer within one hundred (100) miles of Tallahassee, Florida; and finally, prohibits Sasso from disclosing any confidential/proprietary Buckeye business information during or after employment with Buckeye. The Non-Compete Agreement also contains a "choice of law" provision mandating that Missouri law would be used in the application and interpretation of the subject Non-Compete Agreement.

---

[2]The "facts" as set forth by the Court are for the purpose of the instant motion only and do not represent any factual findings by the Court outside the realm of this transfer motion.

[3]Attached as an exhibit to the complaint as originally filed with the Circuit Court for the County of St. Louis, Missouri.

During the course of his employment with Buckeye, Sasso sold janitorial supply and maintenance products and equipment to Buckeye's customers primarily in the Norcross, Georgia area. On or about February 5, 2007, Buckeye terminated Sasso's employment.

In September 2007 Sasso procured employment with defendant Unisource in which he sells and distributes, directly or indirectly, Unisource janitorial cleaning products and equipment (among other things) to Unisource's customers in the Norcross, Georgia area. On or about September 21, 2007 Buckeye became aware of Sasso's employment with Unisource. Believing said employment to be in violation of Sasso's Non-Compete Agreement, on September 28, 2007, Buckeye filed the current Petition for Equitable Relief and Damages with the Circuit Court for the County of St. Louis, Missouri.

On or about October 15, 2007 defendant Unisource removed this action to federal court based upon diversity jurisdiction. *See*, Court Document #1. On or about October 16, 2007 Buckeye filed a motion for temporary restraining order (TRO). *See*, Court Document #6.

Meanwhile, on or about October 9, 2007 Unisource and Sasso filed a lawsuit in the Superior Court of Gwinnett, Georgia seeking a TRO enjoining Buckeye from proceeding in the Missouri state lawsuit. On or about October 17, 2007 Buckeye removed the Georgia state lawsuit to the United States District Court for the Northern District of Georgia, Atlanta Division. On or about October 22, 2007 the Georgia district court denied the TRO and stayed and administratively closed the Georgia action pending this Court's determination regarding the TRO and transfer issues present in this case. The Georgia district court left open the door to reopening the administratively closed case: "[s]hould the Eastern District of Missouri determine that it does not have jurisdiction or otherwise decline to hear the case before it under the first-filed rule, any

party may move to reopen [the Georgia Action]". Exhibit D attached to defendants' motion and brief in support of transfer (#16).

Defendants seek to transfer this case to the United States District Court for the Northern District of Georgia, Northern Division.[4] It contends that all the requirements of transfer under 28 U.S.C. §1404(a) have been met; that this is an action concerning business relationships centered in Georgia and events occurring only in Georgia. Plaintiff, on the other hand, argues that this Court has jurisdiction, that it filed first in Missouri, and Missouri law applies.

Defendant seeks transfer pursuant to 28 U.S.C. §1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the
>
> interest of justice, a district court may transfer any
>
> civil action to any other district or division where it
>
> might have been brought.

In making a §1404(a) analysis, a plaintiff's choice of proper forum is given great weight and should not be disturbed unless the movant makes a clear showing that the balance of interest weighs in favor of the movant. Anheuser-Busch v. All Sports Arena Amusement, 244 F.Supp.2d. 1015, 1022 (E.D.Mo. 2002); Graff v. Qwest Communications Corp., 33 F.Supp. 2d. 1117, 1120-21 (D.Minn. 1999) *citing* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); Houk v. Kimberly-Clark Corp., 613 F.Supp. 923 (W.D.Mo. 1985). Merely shifting the burden of inconvenience and cost is not enough to grant a transfer. Medicine Shoppe Int'l v. Tambellini, 191 F.Supp. 2d. 1065, 1069 (E.D.Mo. 2002) *citing* Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d. 688, 696-97 (8th Cir. 1997); Houk, at 927-28; *see also*, Van Dusen v. Barrack, 376 U.S. 612,

---

[4]The Court presumes that if the instant motion to transfer is granted, defendants will immediately petition the Georgia district court to reopen the Georgia case.

646 (1964). The interests to be considered include the convenience of the parties and witnesses, the availability of judicial process to compel attendance of hostile witnesses, the governing law, relative ease of access to sources of proof, possibility of delay and prejudice if a transfer is granted, and practical considerations of cost and efficiency. Terra Int'l, at 696; Biometics, L.L.C. v. New Womyn, Inc., 112 F.Supp.2d. 869, 875 n.4 (E.D.Mo. 2000); General Committee of Adjustment v. Burlington Northern Railroad, 895 F.Supp. 249, 252 (E.D.Mo. 1995); New Dawn Natural Foods v. Natural Nectar Corp., 670 F.Supp. 869, 873 (E.D.Mo. 1987); Midwest Mechanical Contractors, Inc. v. Tampa Constructors, 659 F.Supp. 526, 532 (W.D.Mo. 1987); Houk, at 927; *see also*, May Department Stores v. Wilansky, 900 F.Supp. 1154, 1165 (E.D.Mo. 1995). However, a district court is not limited to evaluating a transfer motion based upon these enumerated factors alone. Such an evaluation requires a case-by-case evaluation of the particular circumstances involved, as well as consideration of all relevant factors. Terra Int'l., at 691; Graff, at 1121.

Although a change in venue is well within the trial court's discretion, it should not be freely granted. In Re Nine Mile, Ltd., 692 F.2d. 56, 61 (8th Cir. 1982); Anheuser-Busch v. All Sports Arena Amusement, at 1022. After weighing the relevant factors and considering the particular circumstances present in the case, unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should be left undisturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947);Medicine Shoppe v. Tambellini, at 1069; May Dept. Stores v. Wilansky, at 1165; New Dawn, 670 F.Supp. at 874; St. Louis Federal Savings and Loan v. Silverado Banking, 626 F.Supp. 379, 383 (E.D.Mo. 1986). To prevail on his motion to transfer, defendant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue

were transferred.  <u>Nelson v. Soo Line Railroad Co.</u>, 58 F.Supp.2d. 1023, 1026 (D.Minn. 1999); <u>Imation Corp. v. Sterling Diagnostic Imaging, Inc.</u>, 47 U.S.P.Q. 1745, 1747 (D.Minn. 1998).

Upon review of the matter, the Court determines that defendants' motion to transfer should be granted.  This case clearly involves the contractual relationship between plaintiff and defendant Sasso, and the alleged tortious inference with that contractual relationship by defendant Unisource.  Plaintiff alleges that Sasso, in violation of his Non-Compete Agreement, has utilized Buckeye's proprietary customer and business information to continue seeing Buckeye's customers in Georgia for the benefit of Sasso's new employer, Unisource.  Thus, the conduct at issue occurred solely in Georgia.

The parties have filed their respective lawsuits in forums where the corporate parties' respective principal places of business are located; thus, a transfer would merely shift the inconvenient forum from one party to the other.  However, defendant Sasso is a long-time resident of Georgia and litigation here would be an inconvenient forum for him.  Furthermore, plaintiff evidently has a significant business enterprise in Georgia that it is very anxious to protect.

The majority of witnesses, especially non-party witnesses, crucial to the events significant to the alleged breach of the Non-Compete Agreement are all located in Georgia.  All of the present and potential Buckeye customers plaintiff asserts that defendant Sasso has marketed to and serviced on behalf of Unisource are located in or near Norcross, Georgia.  These witnesses are not subject to the subpoena power of this Court.  Any subpoenas and disputes concerning those subpoenas would have to be addressed by a Georgia court.  The majority of party-witnesses reside in or near Norcross, Georgia.  In sum, at least sixty (60) potential non-party witnesses and at least ten (10) party witnesses are Georgia residents.  So far, plaintiff has identified only one (1) Missouri witness in connection with the issues raised in this lawsuit.  The financial burdens

associated with Georgia witnesses travel to Missouri, the parties' inability to compel live testimony of key Georgia witnesses, and the disruption of several Georgia business operations due to travel to Missouri favors transfer to Georgia.

It appears to this Court that the location of relevant documents in this action also favors transfer to Georgia. Unisource's documents concerning Sasso's employment and business transactions are located in Norcross, Ga. The documents of Sasso's Georgia customers regarding his business relationship with them are located in or near Norcross, Georgia. Buckeye's records relating to customer lists, customer information, and other information relevant to this dispute are accessible through electronic means and paper records located at Buckeye's Norcross, Georgia Cleaning Center.

Buckeye argues that discovery including financial matters between Buckeye and Sasso, when Sasso was Buckeye's employee are located in Missouri. It further argues that it sends billing invoices to Georgia customers from St. Louis, Missouri. This evidence, along with the fact that Sasso was trained in St. Louis and attended a meeting in St. Louis (while a Buckeye employee) is simply irrelevant. Facts such as these may be relevant to a personal jurisdiction issue, but such an issue is not before the Court. At the moment, neither Sasso nor Unisource are expressly raising a personal jurisdiction objection to maintaining the lawsuit in Missouri. Thus, there is no reason for the Court to consider evidence that is only relevant to an issue of personal jurisdiction over these defendants.

As stated before, the conduct giving rise to this lawsuit originated in Georgia. In fact, plaintiff has recently filed a supplemental pleading accusing defendants of contacting yet another Georgia Buckeye customer. So, clearly, the nexus of this lawsuit are the business relationships with customers of Buckeye and/or Unisource in Georgia. and whatever contact Sasso has made

with them. Sasso's alleged breach of the Non-Compete Agreement arises out of conduct in Georgia. Unisource's alleged tortious interference with Sasso and Buckeye's Non-Compete Agreement and alleged misappropriation of Buckeye's trade secrets stems from Unisource's employment of Sasso in Georgia. To the extent that any damage arose, it arose in Georgia.

At this juncture, the Court has no opinion regarding the merits of the Missouri choice of law provision in the Non-Compete Agreement.[5] The Court is confident that just as a Missouri court can properly apply Missouri law, a Georgia court can also properly apply Missouri law. Furthermore, assuming that Missouri law is applicable to the interpretation and application of the Non-Compete Agreement as to the breach of contract claim against Sasso, it is probable that Georgia law would apply to the tortious interference claim against Unisource.

Plaintiff's primary argument against transfer is raised in connection with the "first-filed rule". Plaintiff contends that since it filed first in Missouri, venue should remain here. Defendant contends that 1) the first-filed rule is inapplicable in consideration of a transfer motion; and 2) even if the Court considers the applicability of the first-filed rule, such consideration is part of the §1404 analysis.

In instances wherein parallel litigation has been instituted by the same or different parties in different courts, the "first-filed rule" gives priority to choice of venue of the party who first established jurisdiction. Northwest Airlines v. American Airlines, 989 F.2d. 1002, 1004-1006 (8th Cir. 1993)(internal citations omitted); *see*, Keymer v. Management Recruiters Intel., 169

---

[5]The plaintiff exerts considerable energy and paper to a conflict-of-law analysis in order to support its contention that Missouri law governs the interpretation and application of the Non-Compete Agreement. However, that is not the issue to be addressed in the instant matter. Transferring this case to Georgia will not impede the resolution of any conflict of law dispute that may arise regarding the interpretation and application of the Non-Compete Agreement. Missouri law is not relevant to the matter of transfer since the merits of the agreement is not the issue presently before this Court.

F.3d. 501, 503 n.2 (8th Cir. 1999) *citing* Northwest Airlines, *supra.*; Anheuser-Busch, Inc. v. Supreme Intel. Corp., 167 F.3d. 417, 419 n.3 (8th Cir. 1999) *citing* Northwest Airlines, *supra.*; Monsanto Technology LLC v. Syngenta Crop Protection, Inc., 212 F.Supp.2d. 1102-03 (E.D.Mo. 2002) *citing* Northwest Airlines, *supra.*; General Committee of Adjustment GO-386 et. al. v. Burlington Northern Railroad, 895 F.Supp. 249, 251-52 (E.D.Mo. 1995). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; however, the rule should not be applied in a rigid, mechanical or inflexible manner but rather should serve as a means to facilitate the interests of justice. Id. The prevailing standard is that in the absence of "compelling circumstances", the first-filed rule should apply. Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System, 57 F.3d. 638, 641 (8th Cir. 1995) *citing* Northwest Airlines, *supra.*; Monsanto Technology, at 1102-03; Eveready Battery Co. v. Zinc Products Co., 21 F.Supp.2d. 1060, 1061-62 (E.D.Mo. 1998); Commercial Union Ins. v. Torbaty, 955 F.Supp. 1162, 1163 (E.D.Mo. 1997); General Committee of Adjustment GO-386, at 251-52 (citations omitted).

The Eighth Circuit has identified "two red flags" that indicate the presence of compelling circumstances justifying the non-application of the first-filed rule. Firstly, whether the "first" lawsuit was filed after the other party gave notice of its intention to sue; and secondly, whether the "first" action was for declaratory relief rather than for damages or equitable relief. Northwest Airlines, at 1007; *see*, Anheuser-Busch, Inc. v. Supreme Intel. Corp., at 419; Boatmen's First National Bank of Kansas City, at 641; Eveready Battery, at 1062; Commercial Union Ins., at 1163.

9

Finally, the cases do not have to be identical as to parties and/or issues, but must be related that there is substantial overlap between the cases regarding the issues raised. Monsanto Technology, at 1103; General Committee of Adjustment GO-386, at 252.

While it appears true that neither of the traditional "red flags" are present in this case, the Court finds compelling reasons justifying the non-application of the first-filed rule. "The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; however, its application is not meant to be rigid, mechanical or inflexible but rather to serve as a means to facilitate sound judicial administration." General Committee of Adjustment GO-386 v. Burlington Northern Railroad, 895 F.Supp. 249, 251 (E.D.Mo. 1995)(*citing* Northwest Airlines, at 1005). This Court has recognized that "[c]ompelling reasons for not applying the rule may be grounded on whether the defendants have met the requirements of §1404(a) in seeking to transfer [the]case." General Committee of Adjustment GO-386, at 252.

The Court finds that defendants have met the requirements of §1404(a) and therefore compelling reasons exist for the non-application of the first-filed rule. Plaintiff's choice of forum is not absolute. It is only one of several factors to consider. In the present case, the choice of Missouri as the litigation forum would be a hardship to defendant Sasso and the vast majority of key party and non-party witnesses who all reside in Georgia. The ability of this Court to procure the testimony of these witnesses is severely hampered by their location in Georgia; whereas, a Georgia court could easily subpoena these witnesses and resolve any disputes. All of the alleged misconduct occurred in Georgia[6], and any restraint would be on future conduct in Georgia. Most, if not, all of the discovery relevant to the issues in this case is located in Georgia. Although the

---

[6]In fact, as previously noted, Buckeye recently filed a supplemental pleading alleging additional "improper solicitation" of Buckeye customers in Georgia by defendant Sasso. Thus, by plaintiff's own admission, the conduct it is trying to enjoin is conduct in Georgia.

10

Non-Compete Agreement has a choice-of-law provision for Missouri law, the Court is confident that a Georgia court can properly interpret and apply Missouri law as needed.

There is no dispute that Unisource operates some facilities in Missouri, and that Buckeye and Unisource have a long, contentious litigation history in the Missouri courts. However, none of this is relevant to the issue of a §1404(a) transfer. Other cases involved other fact situations which are not present here; i.e., disputed conduct occurred in Missouri, majority of key witnesses in Missouri or subject to the subpoena power of Missouri courts, etc. The Court is only concerned with the facts as presented in this case, and the facts in this case and the interests of justice favor transfer to Georgia.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to transfer (#15) be and is **GRANTED.** This cause of action, along with all pending motions, including plaintiff's motion for temporary restraining order (#6) be and is transferred to the United States District Court for the Northern District of Georgia, Atlanta Division upon the re-opening of the case **Unisource Worldwide, Inc. and Craig Sasso v. Buckeye International, Inc., Case No. 1:07-CV-2578-JTC.**

**IT IS FINALLY ORDERED** that the hearing scheduled for November 26, 2007 at 9:30 a.m. in the courtroom of the undersigned as to whether or not a preliminary injunction should issue in this case is **CANCELLED**.

Dated this   19th   day of November, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE